UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JESSIE ENGLES,

                                  Plaintiff,

v.                                                        9:23-cv-1259
                                                           (ECC/CBF)

ANN MARIE SULLIVAN, et al.,

                                  Defendants.

_____

**Appearances:**

Jessie Engles, *Pro se Plaintiff*
James D. Taylor, Asst. Att'y General, *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.       INTRODUCTION

Plaintiff Jesse Engles brings this *pro se* action asserting claims pursuant to 42 U.S.C. §

1983, Title II of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq*. (ADA), and

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*. (Rehabilitation Act).  Dkt.

No. 6 (Am. Compl.).  Presently before the Court is Defendants' motion for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dkt. No. 45.  The motion is fully

briefed.  Dkt. Nos. 45-6, 68, 69.  For the reasons that follow, Defendants' motion is granted in part

and denied in part.

## II.      PROCEDURAL HISTORY

Plaintiff commenced this action on September 6, 2022, by filing a complaint, along with

an application to proceed *in forma pauperis* (IFP), in the Western District of New York.  Dkt. Nos.

1, 2.  By Decision and Order entered on March 20, 2023, Chief U.S. District Judge Elizabeth A. Wolford granted the IFP application, and found, after reviewing the complaint for sufficiency in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, that the pleading failed to state a claim upon which relief may be granted.  Dkt. No. 5.  Plaintiff was afforded forty-five days to submit an amended complaint.[1]  *Id*. at 16-17.  Plaintiff timely submitted an amended complaint on April 24, 2023.  Am. Compl.

On October 10, 2023, Chief Judge Wolford directed that Plaintiff's claims be transferred to the Northern District of New York pursuant to 28 U.S.C. § 1404(a).  Dkt. No. 8.  As set forth therein, Plaintiff's amended complaint states that he suffers from a serious mental illness and prison settings such as the Special Housing and Residential Mental Health Treatment Units (SHU and RMHU), in which inmates are confined to their cells for 23 hours per day, exacerbate his mental illness.  *Id*. at 3 (citing Am. Compl. at 8-9).  Plaintiff alleges that the New York State Department of Corrections and Community Supervision (DOCCS) policy of placing inmates with mental health diagnoses in restrictive confinement settings such as SHU and RMHU intensifies his suffering and psychiatric deterioration and has, for him, resulted in a revolving door of restrictive confinement.  *Id*. (citing Am. Compl. at 9-10).  Consequently, Plaintiff has spent many years confined in the SHU, RMHU, and other types of restrictive housing, such as observation cells.  *Id*. (citing Am. Compl. at 10, 12).  In all, Plaintiff has spent "cumulative time" in restrictive housing "from 2011 until 2020."  *Id*. (citing Am. Compl. at 12, 14).

Plaintiff claims that the Office of Mental Health (OMH) did not intervene at the disciplinary hearings that kept him in restrictive confinement, "either to indicate that his behavior

---

[1] The page number refers to the page that is assigned by the Court's electronic filing system (CM/ECF).  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

may have been due to his mental illness or to recommend that he be removed from SHU/RMHU confinement to [an Intermediate Care Program]." *Id*. at 4 (citing Am. Compl. at 11). Plaintiff further alleges that despite his prolonged restrictive confinement, "no evaluation was conducted . . . to determine whether the extraordinary length of the confinement was causing severe and irreparable harm as the days in the SHU/RMHU turned into weeks, months, and years." *Id*. (quoting Am. Compl. at 14). Plaintiff contends, and the documents attached to his amended complaint show, these events may have taken place at multiple correctional facilities across the state. *Id*.[2]

Construed liberally, Plaintiff alleges that keeping him in restrictive confinement and failing to provide him with adequate mental health care violated his rights protected by the Eighth and Fourteenth Amendments, the ADA, and the Rehabilitation Act. *Id*. As Chief Judge Wolford surmised, Plaintiff brings his claims against the persons and entities with the power to address the practices and policies that kept him in restrictive confinement for more than a decade, that is: DOCCS; OMH; Bryan Hilton (Hilton), Associate Commissioner of DOCCS Mental Health; Anne Marie Sullivan (Sullivan), OMH Commissioner; Danielle Dill (Dill), OMH Executive Director; and Donald Venettozzi (Venettozzi), DOCCS Director of Special Housing. *Id*. at 4-5. Because DOCCS, OMH, and their executives—Venettozzi, Hilton, Sullivan, and Dill—are all located in the Northern District of New York, in the interest of justice, Chief Judge Wolford transferred Plaintiff's claims to this District pursuant to 28 U.S.C. § 1404(a). *Id*. at 5-6. On October 11, 2023, the matter was transferred to this District. Dkt. No. 9.

---

[2] Specifically, Plaintiff references the Downstate, Sing Sing, Attica, Southport, Auburn, Five Points, Marcy, Sullivan, Elmira, Wende, Great Meadow, and Clinton Correctional Facilities. Am. Compl. at 18-23.

By Decision and Order entered on November 16, 2023, U.S. District Judge Mae A. D'Agostino reviewed the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and determined the following claims survived *sua sponte* review and required a response: (1) Plaintiff's ADA and Rehabilitation Act claims against DOCCS and OMH; (2) Plaintiff's Eighth Amendment medical indifference claims against Hilton, Sullivan, Dill, and Venettozzi; (3) Plaintiff's Eighth Amendment claims based on excessive restrictive confinement against Hilton, Sullivan, Dill, and Venettozzi; and (4) Plaintiff's Fourteenth Amendment due process claims against Hilton, Sullivan, Dill, and Venettozzi.[3]  Dkt. No. 10 at 24.  On April 1, 2024, Defendants answered, Dkt. No. 21 (Ans.), and the Court issued a mandatory pretrial discovery and scheduling order.  Dkt. No. 23.

On May 9, 2025, Defendants filed a motion for summary judgment, Dkt. No. 45 together with a Local Rule 56.1 statement, Dkt. No. 45-5 (Defs. Stmt.), and memorandum of law, Dkt. No. 45-6 (Defs. Mem.), seeking dismissal of the amended complaint in its entirety.  After numerous extensions, *see* Dkt. Nos. 47, 52, 54, 57, 59, 62, 66, Plaintiff opposed the motion, Dkt. No. 68 (Pls. Opp.), and Defendants replied, Dkt. No. 69.

## III.    STANDARD OF REVIEW

Defendants have styled their motion as a motion for summary judgment pursuant to Rule 56.  Dkt. No. 45.  Although this case has been pending for more than three years, and despite the seriousness of Plaintiff's allegations, the summary judgment record does not contain a single affidavit from any Defendant, nor a single medical record, nor a single disciplinary hearing transcript, determination, or appeal.  *Id.*  Instead, Defendants exclusively rely on the allegations of

---

[3] This matter was reassigned to the undersigned for all further proceedings on January 15, 2025. Dkt. No. 36.

the amended complaint and attached exhibits.[4]  *Id.*  "To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under [Rule] 12(b)(6)."[5]  *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 338 (N.D.N.Y. 2010); *see Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) ("A motion for summary judgment may be made solely on the pleadings, when it is so made it is functionally the same as a motion to dismiss or a motion for judgment on the pleadings.") (quoting 6 Moore's Federal Practice, P56.02(3), p. 2035).  As a result, where appropriate, a court may treat the motion as a motion to dismiss or a motion for judgment on the pleadings.  *Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 182 (N.D.N.Y. 2009); *see, e.g., Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without

---

[4] After reviewing the docket, the Court has serious concerns about the adequacy of the Court-ordered mandatory discovery conducted in this matter.  *See* Dkt. Nos. 23, 29, 34.  Discovery closed on November 11, 2024.  Dkt. No. 34.  Defendants have not, however, filed a status report advising that Plaintiff was served with mandatory disclosures.  *See* Docket Report.  Therefore, Defendants will be directed to file the required status report and the Court will proceed accordingly.  Defendants' status report should also address whether any pretrial discovery remains outstanding notwithstanding the expiration of the discovery deadline.

[5] "The difference between a Rule 12(b)(6) and Rule 12(c) motion[] 'is largely academic because the standard under Rule 12(c) is the same as the standard under Rule 12(b)(6): Accepting the non-moving party's allegations as true and viewing the facts in the light most favorable to that party, judgment on the pleadings or dismissal for failure to state a claim should be granted if the moving party 'is entitled to judgment as a matter of law.'" *Butnick v. Experian Info. Sols., Inc.*, No. 20-cv-1631, 2021 WL 395808, at *2 (E.D.N.Y. Feb. 4, 2021) (quoting *Ashley v. Gonzalez*, No. 19-cv-6282, 2020 WL 7027501, at *2 (S.D.N.Y. Nov. 30, 2020) (quoting *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, 165 (S.D.N.Y. 1999))).  "The difference between the two motions is that a motion pursuant to Rule 12(b)(6) seeking dismissal for failure to state a claim is made prior to the filing of an answer to the claim for which dismissal is sought, whereas a motion pursuant to Rule 12(c) seeking judgment on the pleadings is made after the relevant pleadings are closed." *Fisher-Price, Inc. v. Kids II, Inc.*, No. 10-cv-988A(F), 2011 WL 6409665, at *6 (W.D.N.Y. Dec. 21, 2011).

notice to the parties."); *Dashiell v. Stevens Cnty.*, No. 2:23-cv-00239, 2024 WL 4363126, at *10 (E.D. Wash. Sept. 30, 2024) (recognizing that "many courts have concluded that a motion for summary judgment may be treated as a Rule 12(b)(6) or 12(c) motion where the defendant challenges the sufficiency of the complaint's allegations, provided the court does not consider extrinsic evidence in assessing that challenge," and citing, among other cases, *Schwartz*), *appeal dismissed sub nom. Dashiell v. Cnty. of Stevens*, No. 24-6750, 2025 WL 1299809 (9th Cir. Feb. 28, 2025).

Based on the foregoing, the Court concludes that Defendants' motion is functionally a Rule 12(c) motion for judgment on the pleadings. *See Tafari*, 714 F. Supp. at 338, *Schwartz*, 405 F.2d at 273.[6] "Rule 12(c) provides that '[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.'" *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting Fed. R. Civ. P. 12(c)). "For a complaint to withstand judgment on the pleadings, it 'must contain sufficient factual matter, accepted as true, to state a

---

[6] The Court is cognizant of the Second Circuit's recent decision in *Miller v. Lamanna*, No. 24-2314-CV, 2026 WL 643744, --- F.4th ---- (2d Cir. Mar. 9, 2026). There, "[f]ollowing extensive discovery, defendants-appellees moved for summary judgment, arguing both that Miller's complaint failed to state a claim for discrimination and that the summary judgment record did not create a genuine dispute as to any material fact." 2026 WL 643744, at *1. In support of their motion, the defendants had "submitted twelve declarations, over fifty supporting exhibits, and a Local Rule 56.1 Statement, together totaling more than 700 pages" and "[i]n opposition, Miller filed his own affidavit, supported by thirty-two exhibits; an affidavit by his attorney, supported by forty-four exhibits; and a counter Local Rule 56.1 Statement, together totaling over 1,000 pages." *Id*. at *2. The district court disregarded the parties' factual arguments based on the summary judgment record, and dismissed Miller's claims under Rule 12(b)(6), after considering only the allegations in the complaint. *Id*. at *1. On appeal, Miller argued "the district court exceeded its discretion by converting defendants' motion for summary judgment into a motion to dismiss." *Id*. at *4. The Second Circuit agreed. *Id*. Here, by contrast, the summary judgment record consists only of Plaintiff's amended complaint (and the attached exhibits), and by proceeding under the Rule 12(c) standard, the Court has not "ignored the evidence that the parties had compiled during . . . discovery and wasted the time, effort, and resources that both the parties and the court had expended over that time." 2026 WL 643744, at *1.

6

claim to relief that is plausible on its face,' which is the same standard that governs a motion to dismiss under Rule 12(b)(6)." *Beck v. Manhattan Coll.*, 136 F.4th 19, 22 (2d Cir. 2025) (quoting *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023)); *see also, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor . . . . This presumption, however, does not extend to legal conclusions." *Decker Advert. Inc. v. Delaware Cnty., New York*, 765 F. Supp. 3d 128, 141 (N.D.N.Y. 2025) (first citing *ATSI Commc'ns, Inc.*, 493 F.3d at 98; then citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Judgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Id*. (alteration omitted) (quoting *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019)). "Thus, where a 'question [of fact] is in dispute, it [is] improper for the district court to answer it on a motion for dismissal on the pleadings.'" *Id*. (quoting *Sheppard v. Beerman*, 18 F.3d 147, 151 (2d Cir. 1994)).

On a Rule 12(c) motion, the court "considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). "Furthermore in a pro se case, the court must view the [pro se litigant's] submissions by a more lenient standard than that

accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).

## IV.    DISCUSSION

Defendants argue dismissal is warranted because: (1) the conditions Plaintiff experienced during his confinement were not sufficiently serious and there is no evidence that Defendants acted with a culpable state of mind; (2) Defendants were not deliberately indifferent to Plaintiff's medical needs; (3) Plaintiff's confinement did not implicate a liberty interest, and, even if it did, Defendants are entitled to qualified immunity; (5) Defendants did not violate the ADA and/or the Rehabilitation Act; and (6) Defendants are entitled to dismissal for lack of personal involvement. *See* Defs. Mem. at 3, 7-18.    As previously alluded to, Defendants have not submitted *any* admissible evidence in support of their motion. *See generally* Defs. Stmt.

### A.    Individual Defendants

Based on the pleadings, the parties agree Hilton is "the Associate Commissioner of DOCCS mental health and is responsible for the administration and operation of the treatment programs established pursuant to Corrections Law 401 for prisoners with mental illness in state correctional facilities, who are in need of psychiatric services but who do not require hospitalization." Am. Comp., ¶ 9; Ans., ¶ 10.    Sullivan is "the Commissioner of OMH.    She is responsible for the operation & administration of programs for the treatment of prisoners with mental illness confined in New York State Correctional Facilities." Am. Comp., ¶ 12; Ans., ¶ 13. Dill is "the Executive Director of the Office of Mental Health and Central N.Y. psychiatric facility for OMH.    She is responsible for the operation & administration of programs for the treatment of prisoners with mental illness confined in New York State Correctional Facilities, and the CNYPC." Am. Comp., ¶ 13; Ans., ¶ 14.

Venettozzi is "the Director of Special Housing Units within DOCCS and I. I. Disciplinary program. Director Venettozzi has policy making and supervisory authority with regard to Special Housing Units and DOCCS disciplinary process, and is personally involved in authorizing, maintaining and enforcing the unconstitutional policies and customs challenged by plaintiff." Am. Compl., ¶ 10; Ans., ¶ 11. Moreover, "Venettozzi has final policy-making and supervisory authority within DOCCS when it pertains to SHU sanctions. As director of SHU, and pursuant to New York law, he is aware of and has ultimate authority with regards to all SHUs . . . [and] has the authority to cause DOCCS policies to be amended, adopted or repealed." Am. Compl., ¶ 75; Ans., ¶ 66. Lastly, Venettozzi "reviews, develops, implements, amends, and monitors DOCCS disciplinary policies and procedures and their consequences and reports to the Commissioner." Am. Compl., ¶ 76; Ans., ¶ 67.

Plaintiff claims that Hilton, Sullivan, Dill, and Venettozzi violated his rights under the Eighth and Fourteenth Amendments. Am. Compl., ¶¶ 82-85; *see also* Dkt. No. 10 at 17-21, 24. Defendants argue that Plaintiff's Eighth and Fourteenth Amendment claims fail as a matter of law. *See* Defs. Mem. at 7-13, 15-17.

### 1.    Legal Standards

#### a.    Personal Involvement

To establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[T]here is no special rule for supervisory liability" and "a plaintiff must plead and prove 'that each Government-official

defendant, through the official's own individual actions, has violated the Constitution.'" *Tangretti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "Thus, the 'factors' necessary to plead and establish a Section 1983 violation will vary with the constitutional provision at issue 'because the elements of different constitutional violations vary.'" *Williams v. Annucci*, No. 9:20-cv-1417 (BKS/TWD), 2021 WL 4775970, at *4 (N.D.N.Y. Oct. 13, 2021) (quoting *Tangreti*, 983 F.3d at 618) (other citation omitted).

### b.      Eighth Amendment Deliberate Medical Indifference

To state an Eighth Amendment claim for deliberate medical indifference, a plaintiff must allege 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976)). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries[:] [1] . . . whether the prisoner was actually deprived of adequate medical care[; and 2] . . . whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (citations omitted).

"Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'").

10

#### c.    Eighth Amendment Excessive Restrictive Confinement

To state an Eighth Amendment claim related to the conditions of confinement, a plaintiff must allege that "(1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety." *Smith v. Annucci*, No. 9:15-cv-602 (FJS/ATB), 2016 WL 7396007, at \*4 (N.D.N.Y. Nov. 28, 2016) (citing *Farmer*, 511 U.S. at 834); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); *Rasheen v. Adner*, 356 F. Supp. 3d 222, 240 (N.D.N.Y. 2019).

Generally speaking, confining an inmate in restrictive housing, without more, and notwithstanding the restrictions that such confinement imposes on inmate life, does not constitute cruel and unusual punishment.   *See Bowens v. Smith*, No. 9:11-cv-0784, 2013 WL 103575 (GLS/ATB), at \*10 (N.D.N.Y. Jan. 8, 2013) ("Confinement in SHU, in itself, notwithstanding its additional restrictions on inmates, has not been held to constitute cruel and unusual punishment."), *report and recommendation adopted*, 2013 WL 103596 (N.D.N.Y. Jan. 8, 2013); *Hamilton v. Fisher*, No. 9:10-cv-1066 (MAD/RFT), 2012 WL 987374, at \*8 (N.D.N.Y. Feb. 29, 2012) ("'[N]ormal' conditions of SHU confinement do not constitute an Eighth Amendment violation." (citations omitted)), *report and recommendation adopted*, 2012 WL 987122 (N.D.N.Y. Mar. 22, 2012).

"However, courts are also cognizant that 'the deleterious effects of isolated housing on inmates—especially to those assigned to long-term solitary confinement—are well-known and amply documented,' including the fact that prolonged solitary confinement 'can and does lead to significant psychological harm.'" *Smith v. Annucci*, No. 6:18-cv-06261, 2019 WL 539935, at \*6 (W.D.N.Y. Feb. 11, 2019) (quoting *Peoples v. Annucci*, 180 F. Supp. 3d 294, 299 (S.D.N.Y. 2016)).  "Accordingly, courts have found Eighth Amendment violations where inmates are held

11

in solitary confinement for extended periods of time, such that the effects are 'grossly disproportionate' to the reasons for the isolation." *Id.* (quoting *Peoples v. Fischer*, 898 F. Supp. 2d 618, 621 (S.D.N.Y. 2012)); *see also Williams v. Korines*, No. 9:16-cv-1157 (FJS/TWD), 2017 WL 11458011, at *5 (N.D.N.Y. Jan. 5, 2017) ("[SHU] confinement is not 'abnormal' unless it is 'totally without penological justification,' 'grossly disproportionate,' or 'involve[s] the unnecessary and wanton infliction of pain.'" (quoting *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984))).

### d.    Fourteenth Amendment Due Process

To state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454 460 (1989)).

"A liberty interest under the Fourteenth Amendment arises either directly from the Due Process Clause itself or from a state's laws." *Galloway v. Suffolk Cnty. Corr. Facility*, 232 F. Supp. 2d 4, 8 (E.D.N.Y. 2002) (citing *Klos v. Haskell*, 48 F.3d 81, 86 (2d Cir. 1995)). An inmate's protected liberty interest under the Due Process Clause is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "For a liberty interest to be conferred by the state, two requirements must be met: (1) the state must have articulated specified substantive predicates which limit the discretion of state officials; and (2) it must have employed explicitly mandatory language, requiring state officials to follow those substantive predicates." *Klos*, 48 F.3d at 87 (internal quotation marks and citations omitted).

A relevant section of New York Correction Law § 401, which was in effect between December 11, 2015, and March 31, 2022, expressly provided that "[i]nmates with serious mental illness shall receive therapy and programming in settings that are appropriate to their clinical needs while maintaining the safety and security of the facility."  In addition, relevant sections of New York Correction Law § 137(6) that were in effect between December 18, 2017, and September 12, 2019, provided, among other things, that inmates with serious mental illnesses would not remain in a SHU cell for disciplinary reasons in excess of thirty days without assessment by a mental health professional as to the inmate's mental health condition and treatment needs, and that any inmate with a serious mental illness who was not "diverted or removed from segregated confinement [would] be offered a heightened level of care, involving a minimum of two hours each day, five days a week, of out-of-cell therapeutic treatment and programming[,]" except under certain circumstances.

### e.      Qualified Immunity

Qualified immunity shields government employees from liability under Section 1983 in two circumstances: "(1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that their acts did not violate these clearly established rights."  *Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) (cleaned up).  "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011) (internal quotation marks, alterations, and citation omitted).

Qualified immunity attaches if "officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context."  *Dancy v. McGinley*, 843 F.3d 93,

13

106 (2d Cir. 2016) (internal quotation marks and citation omitted).  In essence, the doctrine of qualified immunity provides protection to "all but the plainly incompetent or those who knowingly violate the law." *Dancy*, 843 F.3d at 106 (citation omitted).

A qualified immunity defense presented on a motion to dismiss or motion for judgment on the pleadings "faces a formidable hurdle . . . and is usually not successful." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006) (internal quotation marks omitted); *see also Barnett v. Mount Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013).  "The defense will succeed only where entitlement to qualified immunity can be established 'based [solely] on facts appearing on the face of the complaint.'"  *Barnett*, 523 F. App'x at 813 (alteration in original) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)).

### 2.    Analysis

Beginning with the deliberate medical indifference claims, Defendants assert "Plaintiff was not deprived of medical care and the care provided met applicable standards.  The plaintiff was provided care for his mental illness since he entered the corrections system." Defs. Mem. at 11; Defs. Stmt., ¶¶ 2-5.  The Court finds Defendants' reliance on Plaintiff's Chronological History Display, without more, to be misplaced.  Accepting Plaintiff's allegations as true, and drawing all reasonable inferences in his favor, *Decker Advert. Inc.*, 765 F. Supp. 3d at 141, throughout Plaintiff's confinement in the RMHU, and other restrictive confinement, his mental health continued to deteriorate and caused Plaintiff to suffer depression and suicidal thoughts, and engage in self-harm, and violent, assaultive, and destructive behavior, Am. Compl., ¶¶ 50-51, 55, 61, 66, 73, 77, and it is at least plausible that pursuant to DOCCS' and OMH's policies, practices, and acts, Am. Compl., ¶¶ 9, 10, 12, 13, 75-77, 82, 83, Defendants knew of and disregarded an excessive risk to inmate health and allowed the continuance of such policies or customs. *See Dixon v. Farina*,

14

No. 9:25-cv-00068 (AMN/ML), 2026 WL 482664, at *14 (N.D.N.Y. Feb. 20, 2026) ("[N]umerous district courts within the Second Circuit have determined that Eighth Amendment claims against supervisors who are responsible for the continuation of allegedly unconstitutional policies remain possible following *Tangreti*.")  (collecting cases); *see also Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 416 (E.D.N.Y. 2023) ("Post-*Tangreti*, district courts in the Circuit have determined that personal involvement still may be established for a supervisory defendant if he or she 'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom.'"); *Brunache v. Annucci*, No. 22-cv-196, 2023 WL 146850, at *12 (W.D.N.Y. Jan. 9, 2023) ("While *Tangreti* overruled *Colon*'s five-factor test . . . it did not 'suggest' that a defendant who 'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,' cannot be found liable under Section 1983.") (citations omitted).

Moreover, "at the pleadings stage, courts recognize the common-sense principle that a plaintiff will often not be equipped to come forward with direct evidence of a defendant's subjective or actual knowledge or his intent." *Pearson v. Annucci*, No. 9:20-cv-01175, 2023 WL 2537722, at *8 (N.D.N.Y. Mar. 16, 2023) (quoting *Stone #1 v. Annucci*, No. 20-cv-1326, 2021 WL 4463033, at *10 (S.D.N.Y. Sept. 28, 2021)); *see also Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 864 (2d Cir. 2021) ("A complaint is allowed to contain general allegations as to a defendant's knowledge, because a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.") (citations omitted).

Turning to the excessive restrictive confinement claims, Defendants contend the "conditions" of Plaintiff's confinement, whether considered as confinement without adequate mental health treatment or prolonged SHU sanctions, do not constitute a denial of the "minimal

15

civilized measure of life's necessities." Defs. Mem. at 7-9. But again, accepting the allegations in the amended complaint as true, and drawing reasonable inferences in Plaintiff's favor, despite more than a decade of various forms of restrictive confinement, "[p]ursuant to DOCCS policies and procedures, no evaluation was conducted . . . to determine whether the extraordinary length of the confinement was causing severe and irreparable harm as the days in the SHU/RMHU turned into weeks, months, and years." Am. Compl., ¶ 77; *see, e.g.*, *Smith*, 2019 WL 539935, at *6 (denying motion to dismiss where the plaintiff's Eighth Amendment claims were intertwined with his procedural due process claims and because the viability of the plaintiff's claims turned on issues of fact).

Contrary to Defendants' assertion, and as noted above, *see Pearson*, 2023 WL 2537722, at *8, *Kaplan*, 999 F.3d at 864, Plaintiff has plausibly alleged that Defendants were deliberately indifferent to his excessive restrictive confinement despite knowledge of reasons to end that confinement and their authority to do so. Am. Compl., ¶¶ 9, 10, 12, 13, 75; *see also* Pl. Opp. at 12.

Next, the Court finds Defendants do not meaningfully address Plaintiff's Fourteenth Amendment due process claims and dismissal of those claims is therefore not warranted. Defs. Mem. at 12-13. Again, relying on exhibits Plaintiff submitted with his amended complaint, the "Inmate Disciplinary History" and "Inmate Current Sanction" printouts, Defendants state, *inter alia*, (1) "[t]here is no genuine dispute of material fact that Plaintiff's confinement to RMHU [was] for disciplinary reasons"; (2) "[c]onfining Plaintiff in RMHU was the result of the disciplinary process and due to Plaintiff's mental condition"; (3) "Plaintiff's records also establish that he was sanctioned with SHU time due to disciplinary problems and that prior to each disciplinary sanction he was afforded due process by way of hearings and appeals of the disciplinary charges" and,

16

therefore, (4) Plaintiff's confinement "do[es] not implicate the deprivation of a liberty interest and must be dismissed." *Id*. at 13.

Again, accepting the allegations in the amended complaint as true, and drawing all reasonable inferences in Plaintiff's favor, the Court is unable to conclude that Plaintiff did not have a protected liberty interest in being confined in a less restrictive environment than the one to which he was subjected for more than a decade. *See, e.g.*, *Randle v. Alexander*, No. 10-cv-9235, 2011 WL 1226228, at *3 (S.D.N.Y. Mar. 22, 2011) ("Whether Randle, an inmate with a serious mental illness, has a protected liberty interest in not being confined to SHU for ten years and without the benefit of mental health programs in a less restrictive environment, and whether a constitutional violation occurred, appear to be novel and complex questions, and it cannot be said, at this stage of the proceedings, that Randle's due process claim is meritless."); *Thomas v. Christie*, 655 F. App'x 82, 84 (3d Cir. 2016) (recognizing that a state law may create "a liberty interest rooted in a mentally disabled prisoner's right to receive mental health treatment" and that allegations that policy decisions made by senior officials resulted in "changes in and/or denial of . . . prescribed medical care for non-medical reasons" were sufficient to withstand a motion to dismiss a due process claim); *see, e.g.*, *Smith*, 2019 WL 539935, at *6.

Lastly, Defendants contend that "Hilton, Dill, Sullivan, and Venettozzi are entitled to qualified immunity on Plaintiff's Eighth and Fourteenth Amendment claims" because, "for all of the reasons previously discussed" in their memorandum of law, they "did not violate Plaintiff's constitutional rights." Defs. Mem. at 18. However, "a ruling on qualified immunity on this record would be premature, and the Court declines to address qualified immunity here." *Blazquez v. City of Amsterdam*, No. 1:21-cv-1286 (BKS/DJS), 2023 WL 2164516, at *5 n.8 (N.D.N.Y. Feb. 22, 2023) (citing *Chamberlain ex rel. Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir.

2020) ("[A]dvancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch.")).

Accordingly, based on the foregoing, Defendants' motion seeking dismissal of Plaintiff's constitutional claims is denied.

### B.   DOCCS and OMH

Plaintiff claims DOCCS and OMH violated his rights under the ADA and the Rehabilitation Act.  Am. Compl., ¶¶ 86-89; *see also* Dkt. No. 10 at 24.  Defendants argue these claims fail as a matter of law.  Defs. Mem. at 12-15.

#### 1.   Legal Standards

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, Section 504 of the Rehabilitation Act provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

The Second Circuit has noted that "the standards under both statutes are generally the same[.]"  *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).  Moreover, where, as here, the subtle distinctions between the statutes are not implicated, courts "treat claims under the two statutes identically."  *Id*. (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

To plead a violation under either statute, the plaintiff must allege that (1) he is a qualified individual with a disability; (2) the defendant is subject to the ADA or the Rehabilitation Act; and

18

(3) the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of the plaintiff's disability. *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009) (citing *Henrietta D.*, 331 F.3d 261, 272 (2d Cir. 2003)). "A plaintiff may establish the last prong under three possible theories: 'disparate treatment, disparate impact, and failure to make reasonable accommodation.'" *Smith v. City of New York*, No. 15-cv-4493, 2016 WL 4574924, at *6 (S.D.N.Y. Sept. 1, 2016) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002)).

### 2. Analysis

Plaintiff alleges DOCCS and OMH "discriminate against mentally disable[d] prisoners by failing to provide alternative punishments as a reasonable accommodation so that punishments which exacerbate mental illness are not imposed." Am. Compl. ¶ 88. Plaintiff also claims DOCCS and OMH "discriminate against mentally disable[d] prisoners solely on the basis of their disabilities . . . ." *Id*. ¶ 89. Even accepting the truth of Plaintiff's allegations and drawing all inferences in his favor, the amended complaint fails to identify any DOCCS or OMH "service, program, or activity that Plaintiff was unable to participate in *because* of his medical condition, or a failure to accommodate it, let alone that any such deprivation was based on an official's discriminatory animus or ill will." *Hedrick v. Alfred*, No. 9:25-cv-0980 (BKS/PJE), 2026 WL 407508, at *18 (N.D.N.Y. Feb. 13, 2026) (collecting cases); *see, e.g.*, *Hall v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 12-cv-0377, 2015 WL 901010, at *3-6 (N.D.N.Y. Mar. 3, 2015) (dismissing ADA claims alleging disparate treatment and failure to reasonably accommodate the plaintiff's mental illness, where the plaintiff's denial of access to programs and services was based largely on his conviction of disciplinary offenses, the complaint failed to allege that "non-

mentally-ill inmates convicted of a disciplinary offense and serving a sentence in SHU" received access to those programs, and the complaint largely complained of the adequacy of his mental health treatment rather than discrimination).

Moreover, "[c]ourts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (collecting cases); *see Maccharulo v. New York State Dep't of Corr. Servs.*, No. 08-cv-301, 2010 WL 2899751, at *3 (S.D.N.Y. July 21, 2010) ("[A] claim that challenges the adequacy or the substance of services that are being provided to a disabled individual is not a valid claim under either the ADA or the Rehabilitation Act." (internal citations omitted) (citing *Doe v. Pfrommer*, 148 F.3d 73, 82, 84 (2d Cir. 1998))); *Atkins v. Cnty. of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003) (dismissing claims where plaintiff was "in essence challenging the adequacy of the mental health services provided at the Jail, not illegal disability discrimination").

Accordingly, Defendants motion seeking dismissal of Plaintiff's ADA and Rehabilitation Act claims is granted.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion, Dkt. No. 45, is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Plaintiff's ADA and Rehabilitation Act claims against DOCCS and OMH are **DISMISSED**; and it is further

**ORDERED** that the following claims remain: (1) Plaintiff's Eighth Amendment medical indifference claims against Hilton, Sullivan, Dill, and Venettozzi; (2) Plaintiff's Eighth

Amendment claims based on excessive restrictive confinement against Hilton, Sullivan, Dill, and Venettozzi; and (3) Plaintiff's Fourteenth Amendment due process claims against Hilton, Sullivan, Dill, and Venettozzi; and it is further

ORDERED that Defendants shall file a status report regarding the mandatory disclosures provided to Plaintiff by April 15, 2026; and it is further

ORDERED that the Clerk shall serve a copy of this Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.

Dated: March 25, 2026

_____
Elizabeth C. Coombe
U.S. District Judge